UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLORADO
Bankruptcy Judge Joseph G. Rosania, Jr.

| | |
|---|---|
| In re:<br><br>LOUIS L. BEHRENDT,<br>SSN:  xxx-xx-7435,<br>GINA R. ANTONIO,<br>SSN: xxx-xx-8519,<br><br>    Debtors. | Case No. 23-10074-JGR<br>Chapter 7 |
| DIANA GONZALEZ,<br><br>    Plaintiff,<br>v.<br><br>LOUIS L. BEHRENDT,<br>GINA R. ANTONIO,<br><br>    Defendants. | Adv. Pro. No. 23-01090-JGR |

**ORDER GRANTING DEFENDANT BEHRENDT'S
MOTION FOR SUMMARY JUDGMENT**

On March 25, 2025, Defendant Louis L. Behrendt ("Behrendt") filed his Motion for Summary Judgment ("Motion") against Plaintiff Diana Gonzalez ("Gonzalez") (Doc. 71). Gonzalez filed her response to the Motion on May 7, 2025 ("Response") (Doc. 89). No reply was filed. The papers submitted by the parties consisted of 1,347 pages.

**INTRODUCTION**

Gonzalez filed this adversary proceeding objecting to the discharge of claims asserted against Behrendt and his wife, Gina R. Antonio ("Antonio"). The adversary proceeding was filed on April 7, 2023. On the same day, a related adversary proceeding was filed by her son, Apolo Sevilla ("Sevilla"), Adv. Pro. No. 23-01091-JGR also contesting the discharge of debts he asserts against Behrendt and Antonio.

As more fully set forth in the Order Granting Motion for Summary Judgment filed by Behrendt against Sevilla[1], the findings of fact and conclusions of law of which are incorporated herein, this is not a typical dischargeability adversary proceeding. The debt in question involves a line of credit extended to a real estate development company

---

[1] Doc. 102, September 26, 2025, Adv. Pro. No. 23-01091-JGR

owned by her son, Sevilla, and his business associate, Behrendt. The line of credit was guaranteed by Antonio, Behrendt, Sevilla, and Gonzalez. The line of credit was satisfied through the sale of the real estate owned by Gonzalez.

Because no funds were directly obtained by Behrendt and Antonio from either Sevilla or Gonzalez, the adversary complaint is predicated on various claims attempting to extend liability to Behrendt and Antonio from the real estate development company's default on the line of credit.

Behrendt has moved for summary judgment against Gonzalez in this adversary proceeding and against Sevilla in the related adversary proceeding. Antonio has also moved for summary judgment against Sevilla in this adversary proceeding and against Sevilla in the related adversary proceeding.

The Court has subject matter jurisdiction over the dischargeability claims brought in this adversary proceeding under 28 U.S.C. § 1334, 28 U.S.C. § 157(a), and 28 U.S.C. § 157(b)(1), and (b)(2)(I), as this is a core proceeding.

## UNDISPUTED BACKGROUND FACTS[2]

Behrendt and Sevilla had known each other for many years. In approximately 2006, Behrendt and Sevilla formed a company known as RedCorp to act as a general contractor. The venture was short-lived as Sevilla moved out of Colorado. Sevilla holds a Bachelor's Degree in Finance, Accounting, and Financial Services and has worked as a mortgage broker and originator, including as Managing Director of his own company, Sevilla Financial Services (Undisputed Facts; Motion Exhibit B).

Sevilla returned to Colorado in 2016 or 2017 and was eventually employed at RedCorp, where his duties included investor relations and business development (Undisputed Facts; Response, Sevilla Affidavit ¶ 30). RedCorp had other employees, including a bookkeeper, and engaged the services of an independent certified public accountant (Undisputed Facts (Sevilla disputes the CPA was independent)).

In 2017, Behrendt, Sevilla, and others formed a special purpose entity to build a home at 155 Southmoor Drive in Denver (Undisputed Facts). In 2019, Behrendt, Sevilla, and others formed another special purpose entity to build a home at 260 Kearney Street in Denver.

In June 2019, Behrendt and Sevilla formed SC Equity LLC ("SC Equity") to purchase development lots commonly known as 2620 Cedar Avenue and 2628 Cedar Avenue in Denver and develop a single-family home on each respective lot. The lots were located in an upscale neighborhood south of the Cherry Creek shopping mall. Separate single purpose entities were formed to purchase each lot. Those entities were wholly owned by SC Equity. Behrendt held a 51% membership interest in SC Equity and was the sole Manager. Sevilla held a 49% membership interest in SC Equity (Undisputed Facts).

---

[2] The recitation of facts in this opinion is based on the pleadings and the parties' statements of uncontested facts.

By late 2019, Behrendt and Sevilla were working together on the two additional development projects—155 Southmoor Drive and 260 Kearney Street in Denver. SC Equity acquired and attempted to develop the two Cedar properties. RedCorp was acting as the general contractor for the two active projects (155 Southmoor Drive and 260 Kearney Street in Denver) and was to act as the general contractor for the development of the two Cedar properties (Undisputed Facts).

Sevilla approached FirstBank to obtain a line of credit to be used by SC Equity. FirstBank required the line of credit to be collateralized. Sevilla reached out to his mother, Gonzalez, and requested her to pledge residential real estate that she owned in Denver, Colorado located at 571 South Williams Street in Denver's desirable Washington Park neighborhood ("Williams Street") (Response, Exhibit 31). In addition, the line of credit was guaranteed by Behrendt, Antonio, Sevilla, and Gonzalez (Motion Exhibits F and K).

The line of credit, in the amount of $956,400, closed on January 2, 2020 (Response, Exhibit F). The line of credit was initially made to Sega, an entity solely owned by Sevilla, due to the bank's mistake (Sevilla's Affidavit ¶s 17, 37). SC Equity assumed the line of credit effective February 28, 2020.

SC Equity immediately began taking draws against the line of credit:

> On January 3, 2020, a draw in the amount of $140,000 was taken;
>
> On January 10, 2020, a draw in the amount of $65,000 was taken;
>
> On January 23, 2020, a draw in the amount of $50,000 was taken;
>
> On January 29, 2020, a draw in the amount of $70,000 was taken;
>
> On February 7, 2020, a draw in the amount of $50,000 was taken;
>
> On February 11, 2020, a draw in the amount of $315,957.57 was taken and used for a downpayment on the Cedar lots;
>
> On February 13, 2020, a draw in the amount of $110,000 was taken;
>
> On March 19, 2020, a draw in the amount of $17,500 was taken.

The draws totaled $502,500 plus the $315,957.57 used for the downpayment on the Cedar lots (Undisputed Facts; Motion Exhibit G).

The draws taken by SC Equity were used for all of the aforementioned development projects, 155 Southmoor Drive, 260 Kearney Street, 2620 Cedar Avenue, and 2628 Cedar Avenue (Undisputed Facts).

In March 2020, the COVID-19 pandemic infected the United States, causing widespread health and welfare, and economic uncertainty[3].

The 155 Southmoor Drive project was completed and sold on October 15, 2020 (Motion Exhibit N). The 260 Kearney Street project was not completed and was sold at the drywall stage on December 24, 2020 (Undisputed Facts; Motion Exhibit O). Construction never began on the Cedar lots and Sevilla and Behrendt decided to sell the undeveloped Cedar lots. A decision was made to sell the undeveloped Cedar lots. The Cedar lots went under contract in January 2021 and were thereafter sold.

On February 10, 2021, Sevilla filed a lawsuit against Behrendt in the Denver District Court, Case No. 2021CV30515, seeking, among other things, an injunction to prevent Behrendt from dispersing the sale proceeds from the sale of the Cedar lots. The state court conducted a two-day evidentiary hearing, finding among other things, that evidence was presented showing Sevilla was regularly informed of SC Equity's finances and denied the preliminary injunction. SC Equity repaid Gonzalez $150,000 from a portion of the sale proceeds. Thereafter, Sevilla voluntarily dismissed the lawsuit (Undisputed Facts).

On March 17, 2021, FirstBank declared the line of credit in default and began collection activities against SC Equity and the guarantors (Response, Nowinski Expert Report).

Gonzalez sold Williams Street and paid FirstBank $1,001,646.43 in full satisfaction of the SC Equity line of credit (Undisputed Facts).

Gonzalez filed a lawsuit in the Denver District Court Case No. 2021CV34126 ("State Court Action"), raising claims for (1) reimbursement claim from SC Equity; (2) contribution claims against Behrendt, Antonio, SC Equity, and RedCorp as co-guarantors; (3) fraudulent transfer claims against SC Equity, Behrendt, and RedCorp; (4) conspiracy claims against SC Equity, Behrendt, and RedCorp; and (5) unjust enrichment claims against Behrendt, Antonio, and RedCorp (Undisputed Facts).

Behrendt and SC Equity brought third-party claims in the State Court Action against Sevilla for (1) breach of fiduciary duty to SC Equity and Behrendt and (2) alleging Sevilla should also be liable on the contribution claims brought by Gonzalez (Undisputed Facts).

On January 10, 2023, RedCorp sought relief under Chapter 7 of the Bankruptcy Code, Case No. 23-10073-JGR. The bankruptcy filing stayed the State Court Action as to RedCorp. The Chapter 7 case was closed as a no asset case (Undisputed Facts).

---

[3] The Court takes judicial notice that the pandemic resulted in significant disruption in supply chains, particularly in the construction industry.

4

Also on January 10, 2023, Behrendt and Antonio jointly sought relief under Chapter 7 of the Bankruptcy Code, Case No. 23-10074-JGR. The bankruptcy filing stayed the State Court Action as to Behrendt and Antonio. They listed assets consisting of their residence located at 7587 East Severn Place, Denver, CO 80230 with a value of $1,120,000 subject to a mortgage in the approximate amount of $870,000. An order abandoning the residence from the bankruptcy estate was entered on May 5, 2023. They listed two vehicles with no non-exempt equity: a 2021 Dodge Charger and a 2022 Nissan Pathfinder. They also listed interests in construction equipment (co-owned by RedCorp): a Kalmar RT 022 Rough Terrain Forklift and a Telehandler. The vehicles and equipment were abandoned by their Chapter 7 Trustee effective as of May 5, 2023. Various other items of personal property including household goods, electronics, wearing apparel, jewelry, retirement accounts, and business interests were determined to have no value to the estate by the Trustee. Behrendt and Antonio owned nominal nonexempt property (Undisputed Facts).

Their Chapter 7 case was administered as an asset case because the Chapter 7 Trustee collected non-exempt wages in the amount of $196; a 2022 Federal Tax Refund in the amount of $2,285; a 2022 State Tax Refund in the amount of $441; and $5,000 from a settlement agreement with Sevilla resolving the third-party claim brought by Behrendt against Sevilla in the State Court Action (Undisputed Facts).

On February 1, 2023, Gonzalez obtained a default judgment against SC Equity for $871,646.43, plus pre-judgment interest from December 31, 2021, and post-judgment interest from February 1, 2023, in the State Court Action (Undisputed Facts).

## GONZALEZ'S LEGAL THEORIES

Behrendt did not obtain moneys directly from Gonzalez. The dischargeability of claims under 11 U.S.C. § 523(a) involves a two-part analysis. The first step requires "the bankruptcy court to determine the validity of the debt under applicable law." *Hatfield v. Thompson (In re Thompson)*, 555 B.R. 1, 8 (10th Cir. BAP 2016). The second step is a determination of whether the debt is excepted from discharge under the applicable section of 11 U.S.C. § 523(a). *Id.*

Accordingly, to prevail on any of the dischargeability claims, first Gonzalez must establish Behrendt is liable for Gonzalez's alleged claims. In her amended complaint, Gonzalez alleges Behrendt and Antonio are obligated to her on the basis of common-law principles of contribution. Accordingly, Behrendt is liable to Gonzalez for the amount of $200,329.

The first two claims for relief are asserted to establish liability. The first claim is against Behrendt and Antonio seeking the avoidance of alleged fraudulent transfers under the Colorado Uniform Fraudulent Transfer Act. The second claim for relief is against Behrendt for civil conspiracy. The fourth claim for relief is against Behrendt seeking to pierce the corporate veil and hold Behrendt liable for the amount of the default judgment entered against SC Equity.

Claims three and five through seven address the dischargeability of the claims under various subsections of 11 U.S.C. § 523(a) and are predicated upon a finding of liability under claims one, two, and four.

## STANDARDS FOR SUMMARY JUDGMENT

The Court shall grant summary judgment if the movant shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed.R.Bankr.P 7056, incorporating Fed.R.Civ.P. 56. The burden is on the moving party to make a prima facie case showing an absence of material fact and entitlement to judgment as a matter of law. *Matsushita Elec. Indus. Co., Ltd. V. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *Wright v. Southwestern Bell Tel. Co.*, 925 F.2d 1288, 1291 (10th Cir. 1991). In applying the summary judgment standard, the Court must examine the factual record and the reasonable inferences therefrom in the light most favorable to the party opposing the motion. *Whitesel v. Sengenberger*, 222 F.3d 861, 867 (10th Cir. 2000).

## ANALYSIS

### Liability on the Alleged Debts

Before Gonzalez can challenge the discharge of her alleged debts, liability for the obligations must be established. To do so, she advances several theories based in state law.

**1. Transfers as to Present and Future Creditors**

The first claim for relief is brought by Gonzalez against Behrendt and Antonio under the Colorado Uniform Fraudulent Transfer Act. The claim seeks to establish conduct demonstrating actual fraud within the meaning of 11 U.S.C. § 523(a)(2)(A) and seeks to use CUFTA to impose liability against Behrendt and Antonio.

In support of the first claim for relief, Sevilla endorsed two expert witnesses from the accounting, tax, and financial advisory firm Kohn Reznick Advisory, LLC—Eric Danner and Kathryn Nowinski. Mr. Danner's affidavit and expert report and Ms. Nowinski's affidavit and expert report were attached to the Plaintiff's Response.

Mr. Danner's expert report concerns whether the transfers made from SC Equity to RedCorp were properly characterized as loans or advanced payments. He determined the transfers were accounted for on RedCorp's books as a liability labeled "Operating Loan (SC Equity Ptnrs)". The transfers were accounted for on SC Equity's books as an asset labeled "Investments – RedCorp".

Mr. Danner concluded the transfers were not loans as there was no actual contract between the parties, SC Equity did not receive value in exchange for the transfers, and the transfers did not satisfy factors giving rise to a debtor-creditor relationship.

6

Mr. Danner further concluded the transfers were not advanced payments as there was no contract between SC Equity and RedCorp for the transfer of the funds, he construed the term "advance" as used in the tax return to mean "loan among related parties," and RedCorp did not recognize the transfers as income, nor did SC Equity record the transfers as expenses.

Ms. Nowinski's expert report focused on whether the transfers between SC Equity and RedCorp could be construed as constructively fraudulent transfers. Ms. Nowinski concluded SC Equity was rendered insolvent by transfers made in 2020 to RedCorp, had unreasonably small capital, and was unable to pay its debts when they came due during the period the transfers were made.

Further, SC Equity received less than a reasonably equivalent value in certain transfers that occurred during the period. Finally, Ms. Nowinski concluded RedCorp utilized the transfers for non-SC Equity-related expenses, including RedCorp's general operating expenses, including taxes, and for the direct or indirect benefit of Defendants Behrendt and Antonio.

Neither report addressed actual fraud required to support a claim for nondischargeability under 11 U.S.C. § 523(a)(2)(A), and accordingly, do not provide meaningful assistance to the Court. Moreover, it is the province of the Court to divine the true nature of the transactions and their legal effect.

C.R.S. § 38-8-105 applies to transfers fraudulent as to present and future creditors and provides:

(1) A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation:

(a) With actual intent to hinder, delay, or defraud any creditor of the debtor; or

(b) Without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor:

(I) Was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or

(II) Intended to incur, or believed or reasonably should have believed that he would incur, debts beyond his ability to pay as they became due.

C.R.S. § 38-8-106 governs transfers fraudulent as to present creditors:

(1) A transfer made or obligation incurred by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made or the obligation was incurred if the debtor made the transfer or incurred the obligation without receiving a reasonably equivalent value in exchange for the transfer or obligation and the

7

debtor was insolvent at that time or the debtor became insolvent as a result of the transfer or obligation.

(2) A transfer made by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made if the transfer was made to an insider for an antecedent debt, the debtor was insolvent at that time, and the insider had reasonable cause to believe that the debtor was insolvent.

Gonzalez's forty-one-page Amended Complaint alleges fraudulent transfers were made with the actual intent to defraud creditors four times.

After identifying various categories of payments made by RedCorp, Gonzalez, in paragraph 42 of the Amended Complaint, alleges: "the above payments were further fraudulent transfers, made with the actual intent to defraud creditors, including FirstBank and [Gonzalez]. These fraudulent transfers were made to or for the benefit of defendants Behrendt and Antonio or other entities owned by Behrendt."

In paragraph 72 of the Amended Complaint, Gonzalez alleges: "as specified above, Behrendt, as its manager and majority owner, caused SC Equity's funds to be transferred to RedCorp with an actual intent to hinder, delay, or defraud [Gonzalez] and other creditors of SC Equity in violation of § 38-8-105 & § 38-8-106." She ignores that RedCorp was the general contractor for the four projects. The real estate projects could not be completed without the services of a general contractor.

These allegations are repeated in paragraph 110 of the Amended Complaint, reciting the elements required for a claim under 11 U.S.C. § 523(a)(1)(A) and in paragraph 123 reciting the elements required for a claim under 11 U.S.C. § 523(a)(4).

The Amended Complaint fails to allege specific facts establishing actual intent to hinder, delay, or defraud creditors. Instead, the Amended Complaint relies on the elements required to establish constructive fraudulent transfers. Namely, transfers made while SC Equity was insolvent or became insolvent, and that were not made in exchange for reasonably equivalent value.

Turning to extending liability to Behrendt and Antonio, the alleged fraudulent transfer claims being asserted in the Amended Complaint require two steps:

(1) The transfers to RedCorp by SC Equity of the draws taken from the FirstBank line of credit are avoidable under CUFTA.

(2) Subsequently, RedCorp allegedly made further fraudulent transfers when the moneys received from the SC Equity transfers were made for obligations not related to SC Equity and for distributions and other payments made to or for the benefit of Behrendt and Antonio.

RedCorp filed for relief under Chapter 7 of the Bankruptcy Code on January 10, 2023. The filing of the bankruptcy case triggered the automatic stay under 11 U.S.C. § 362(a)(1), preventing "the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against

the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title:" This adversary proceeding was filed on April 7, 2023 by Gonzalez without obtaining relief from the automatic stay. The claims asserted against RedCorp were barred by the automatic stay at the time of filing.

Because RedCorp is not an individual, the case was closed without the entry of a discharge order. Pursuant to 11 U.S.C. § 362(c)(2)(A), the automatic stay terminated upon closure arguably allowing Sevilla to then pursue the claims against RedCorp. *See, Sohmer v. Geremaia*, No. 05CA1317, 2006 Colo. App. LEXIS 3435, at *4 (App. Oct. 26, 2006). While creditors cannot pursue fraudulent conveyance actions during the automatic stay period provided in 11 U.S.C. § 362, "once the debtor receives a discharge or the case is otherwise dismissed or closed, creditors are free to pursue such remedies as are available to them, except insofar as they cannot proceed against property of the [bankruptcy] estate." *Id. (quoting United States v. Mazzeo*, 306 F. Supp. 2d 294, 326 (E.D.N.Y. 2004)).

Nevertheless, Gonzalez cannot complete the second step necessary to create liability. To extend liability to Behrendt and Antonio, Gonzales must prove they received fraudulent transfers from RedCorp. No allegations were set forth in the amended complaint that Behrendt or Antonio directly received fraudulent transfers from SC Equity. Once RedCorp filed its chapter 7 bankruptcy, the fraudulent transfer claims became property of the bankruptcy estate. Only the bankruptcy trustee has standing to assert claims that are property of the bankruptcy estate. *Summers v. Perkins*, 81 P.3d 1141, 1142 (Colo. App. 2003). It is critical to note that the Chapter 7 Trustee of the RedCorp bankruptcy estate, who is very experienced, knowledgeable, and well-respected, did not assert that RedCorp made any fraudulent transfers. Also, Sevilla entered an appearance in the RedCorp bankruptcy case, allowing for the opportunity to monitor and participate as a creditor in that case.

Gonzales lacks standing to pursue the alleged fraudulent transfer claims made by RedCorp and Behrendt is entitled to judgment as a matter of law.

### 2. Civil Conspiracy

The second claim for relief brought by Gonzales against Behrendt is for civil conspiracy arising from the alleged fraudulent transfers under CUFTA.

To establish a civil conspiracy in Colorado, a plaintiff must show: (1) two or more persons; (2) an object to be accomplished; (3) a meeting of the minds on the object or course of action; (4) an unlawful overt act; and (5) damages as to the proximate result. *Nelson v. Elway*, 908 P.2d 102, 106 (Colo. 1995) (citation omitted)

Having determined that Gonzales cannot prevail on the CUFTA claims, there is no wrongful act upon which to predicate civil conspiracy.

Gonzales cannot prevail on the alleged civil conspiracy claim and Behrendt is entitled to judgment as a matter of law.

9

### 3. Piercing the Corporate Veil

The fourth claim for relief brought by Gonzales against Behrendt is to pierce SC Equity's corporate veil to impose personal liability for the default judgment entered against SC Equity in the State Court Action.

Gonzales alleges Behrendt exercised pervasive control and committed other wrongful acts such that SC Equity's corporate veil should be disregarded. "With respect to both SC Equity Partners LLC and Red Corp: 1) neither entity was operated as distinct business entities from each other or from Behrendt; 2) assets and funds are commingled; adequate corporate records were not maintained; 3) the nature and form of the entity's ownership and control facilitate misused by Behrendt, an insider; the businesses were thinly capitalized; both entities were utilized as "mere shells"; 4) Behrendt, a member, disregarded legal formalities; and 5) corporate funds and assets were used for non corporate purposes." (Amended Complaint, paragraph 103).

The allegations are belied by the undisputed material facts.

Behrendt owned a 51% membership interest in SC Equity and was the sole manager. Sevilla, Gonzales's son, owned the remaining 49% membership interest. Sevilla holds degrees in finance, accounting, and financial services. He worked in the financial industry for years and owned and operated his own financial-based businesses. Sevilla is sophisticated and knew of all of the transactions.

Exhibit G to the Motion reflects 5 checks representing draws from the FirstBank line of credit signed by Sevilla on behalf of SC Equity payable to RedCorp totaling $435,000. An advice of charge in the amount of $50,000 was taken out by Sevilla for the purchase of a cashier's check on behalf of SC Equity.

Sevilla and Behrendt were engaged in several projects utilizing the services of RedCorp. Sevilla knew the FirstBank line of credit and SC Equity's funds were being used in connection with these projects. Behrendt shared accounting reports with Sevilla as the funds from SC Equity were being transferred to RedCorp.

Behrendt acted within the scope of authority given to him under SC Equity's Operating Agreement. As managing member, Behrendt had specific authority under SC Equity's Operating Agreement to loan money, invest and reinvest funds of the company. (SC Equity Op. Agreement, § 4.2.6). SC Equity's Operating Agreement also allowed for business transactions with RedCorp notwithstanding any potential conflict of interest. (SC Equity Op. Agreement, § 4.9.2).

SC Equity was not a mere alter ego of Behrendt and its corporate structure was not used to perpetuate a wrong. Gonzales never dealt directly with Behrendt and cannot prevail on the claim to pierce the corporate veil and Behrendt is entitled to judgment as a matter of law.

## Dischargeability Under 11 U.S.C. § 523(a)

Gonzales has failed to establish liability for the debts asserted Behrendt. Nevertheless, the Court will examine the claims asserted regarding the dischargeability of the alleged debts. The burden of proof for claims under 11 U.S.C. §523 is a preponderance of the evidence standard. *Grogan v. Garner*, 498 U.S. 279, 291 (1991). However, exceptions to discharge are narrowly construed. In furtherance of the fresh start objective of bankruptcy, doubts are resolved in favor of debtors. *Belkco First Federal Credit Union v. Kaspar (In re Kaspar)*, 125 F.3d 1358, 1361 (10th Cir. 1997).

### 11 U.S.C. § 523(a)(14) and (14A)

11 U.S.C. § 523(a)(14) excepts from discharge a debt incurred to pay a tax to the United States that would be non-dischargeable pursuant to 11 U.S.C. § 523(a)(1). 11 U.S.C. § 523(a)(14A) excepts from discharge a debt incurred to pay a tax to a governmental unit other than the United States that would be dischargeable under 11 U.S.C. § 523(a)(1).

Paragraph 52 of the Amended Complaint identifies payments made by RedCorp to the Internal Revenue Service in connection with corporate payroll taxes. Paragraph 53 of the Amended Complaint identifies payments made by RedCorp to the Colorado Department of Revenue associated with corporate payroll taxes.

The Motion cites *In re White*, 455 B.R. 141, 147 (Bankr. N.D. Ind. 2001) for the proposition that the exception to discharge for debts incurred to pay nondischargeable taxes under 11 U.S.C. § 523(a)(14) and (14A) is inapplicable to individual debtors where no independent individual tax liability has been asserted against the debtor in connection with the payment of corporate employment taxes.

The Amended Complaint fails to allege that the corporate payroll taxes were obligations of Behrendt as opposed to obligations of RedCorp. The Response does not address the claim for summary judgment under 11 U.S.C. § 523(a)(14) and (14A), effectively conceding the issue.

Accordingly, Behrendt is entitled to summary judgment on the claim for relief asserted under 11 U.S.C. § 523(a)(14) and (14A).

### 11 U.S.C. § 523(a)(2)(A)

Section 523(a)(2)(A) provides, in pertinent part, that a Chapter 7 debtor is not discharged from any debt for money or an extension of credit to the extent that such debt was obtained by "false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition."

Under 11 U.S.C. § 523(a)(2)(A), a debt obtained by false pretenses or a false representation is not dischargeable when a creditor proves:

> (1) the debtor made a false representation; (2) with the intent to deceive the creditor; (3) the creditor relied on the false representation; (4) the creditor's reliance was justifiable; and (5) the false representation resulted in damages to the creditor.

*In re Denbleyker*, 251 B.R. 891, 895 (Bankr. D. Colo. 2000) (citing *Field v. Mans*, 516 U.S. 59, 71 (1995)); *Fowler Brothers v. Young (In re Young)*, 91 F.3d 1367, 1373 (10th Cir. 1996).

The claims asserted by Gonzales are not based on false pretenses or a false representation. The Amended Complainat does not allege specific false representations or reliance upon any representation. Rather, the Amended Complaint alleges "actual fraud." "The term 'actual fraud' … encompasses forms of fraud, like fraudulent conveyance schemes, that can be effected without a false representation." *Husky Int'l Elecs., Inc. v. Ritz*, 136 S. Ct. 1581, 1586 (2016).

The Tenth Circuit Bankruptcy Appellate Panel stated that "[w]hen a debtor intentionally engages in a scheme to deprive or cheat another of property or a legal right, that debtor has engaged in actual fraud and is not entitled to the fresh start provided by the Bankruptcy Code." *In re Vickery*, 488 B.R. 680, 690 (10th Cir. BAP (Colo.) 2013) (quoting *In re Vitanovich*, 259 B.R. 873, 877 (6th Cir. BAP 2001)).

Actual fraud is not limited to misrepresentations or misleading omissions. *Vickery*, 488 B.R. at 691 (citing *McClellan v. Cantrell,* 217 F.3d 890, 893 (7th Cir. 2000)). In order to except a debt based on actual fraud, the creditor must prove: (1) a fraud occurred; (2) the debtor intended to defraud; and (3) the fraud created the debt that is the subject of the dispute. *In re Jensen*, No. AP 17-01078, 2019 WL 2403105, at *8 n.63 (10th Cir. BAP (Colo.) June 7, 2019) (quoting *In re Glenn*, 502 B.R. 516, 531 (Bankr. N.D. Ill. 2013), *aff'd sub nom. Sullivan v. Glenn*, 526 B.R. 731 (N.D. Ill. 2014), *aff'd,* 782 F.3d 378 (7th Cir. 2015)). The plaintiff need not establish reliance, because "reliance is relevant only when the fraud takes the form of a misrepresentation." *Vickery*, 488 B.R. at 690 (internal quotation marks and citation omitted).

The allegations in the Amended Complaint focus on claims that the transfers from SC Equity to RedCorp constituted constructive fraudulent transfers. The allegations are that they were made either when SC Equity was insolvent or caused SC Equity to be insolvent and were made without receiving reasonably equivalent value.

As stated above, the only allegations in the Amended Complaint regarding actual intent to defraud are set forth in paragraphs 42, 72, 110 and 123 and generally reference transfers made from SC Equity to RedCorp and then from RedCorp to others, including Behrendt. The undisputed facts establish Sevilla was complicit in the transfers made from SC Equity to RedCorp and he knew the funds would be used for other RedCorp projects. As stated above, Sevilla ignores that SC Equity was the owner of the real estate projects and stood to profit if they were successful. Sevilla, as a sophisticated businessman, knew that. The Court does not discern a fraudulent scheme.

The Amended Complaint fails to allege that Behrendt had the actual intent to defraud Gonzales. Behrendt is entitled to summary judgment on the claim for relief asserted under 11 U.S.C. § 523(a)(2)(A).

### U.S.C. § 523(a)(4)

11 U.S.C. § 523(a)(4) provides that a Chapter 7 debtor is not discharged for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny. In order to prevail on a claim for breach of fiduciary duty as a non-dischargeable debt, the creditor must establish by a preponderance of the evidence that: (1) a fiduciary relationship existed between the debtor and the creditor, (2) the debt owed to the creditor is attributable to fraud or defalcation committed by the debtor in the course of the fiduciary relationship and, (3) the debtor acted with a culpable state of mind. *In re Karch*, 501 B.R. 403, 407 (Bankr. D. Colo. 2013).

The United States Supreme Court has held that defalcation requires an intentional wrong such that the fiduciary must have known that the conduct is improper or consciously disregarded a substantial and unjustifiable risk that the conduct will violate a fiduciary duty. *Bullock v. BankChampain, N.A.,* 569 U.S. 267, 274 (2013).

Whether a debtor is a fiduciary is determined by federal law, although state law is relevant to the inquiry. *Young*, 91 F.3d at 1371. In order to establish a fiduciary duty, a creditor must prove the existence of either an express or technical trust. *Id*.

Under Colorado law, creation of an express trust requires unequivocal and unambiguous language. *Morgan v Wright,* 156 Colo. 411, 415 (1965) (citation omitted). Behrendt may have owed fiduciary duties to SC Equity, its creditors, and/or Sevilla. There was no express trust leading to an actionable claim under 11 U.S.C. § 523(a)(4).

Gonzales cannot prevail on a claim for larceny or embezzlement. Gonzales did not provide funds SC Equity.

"Embezzlement is 'the fraudulent appropriation of property by a person to whom such property has been entrusted or into whose hands it has lawfully come.' Larceny is 'the fraudulent and wrongful taking and carrying away of the property of another with intent to convert the property to the taker's use without the consent of the owner.'" *Kim v. Sun (In re Sun)*, 535 B.R. 358, 367 (B.A.P. 10th Cir. 2015) (internal citations omitted)

The Amended Complaint fails to adequately allege that the funds transferred from SC Equity to RedCorp were obtained without authorization and with the intent to permanently deprive SC Equity of the funds. The projects failed due to COVID's devasting effect on the real estate market. If they were successful, the FirstBank line of credit would have been repaid and the profits would have flowed to SC Equity.

Behrendt is entitled to summary judgment on the claim for relief asserted under 11 U.S.C. § 523(a)(4).

**11 U.S.C. § 523(a)(6)**

11 U.S.C. § 523(a)(6) provides that a Chapter 7 debtor is not discharged for willful and malicious injury by the debtor to another entity or the property of another entity. The creditor must establish that the conduct of the debtor was "willful and malicious" and caused an injury to an entity or the property of an entity.

Non-dischargeability under 11 U.S.C. § 523(a)(6) requires both a "willful injury" and a "malicious injury." *Panalis v. Moore (In re Moore)*, 357 F.3d 1125, 1129 (10th Cir. 2004) ("Without proof of *both*, an objection to discharge under that section must fail."). The United States Supreme Court has held that the term "willful" requires proof of a deliberate or intentional *injury,* not merely a deliberate or intentional *act* that leads to injury. *Kawaauhua v. Geiger*, 523 U.S. 57, 61 (1998). The Tenth Circuit has held that "the term 'malicious' requires proof 'that the debtor either intend[ed] the resulting injury or intentionally [took] action that [was] substantially certain to cause injury.'" *Panalis*, 357 F.3d at 1129 (quoting *Hope v. Walker (In re Walker)*, 48 F.3d 1161, 1164 (11th Cir. 1995)).

The Amended Complaint is devoid of allegations establishing Behrendt acted with willful and malicious intent to cause injury. As stated above, Behrendt and Sevilla stood to profit through SC Equity of the real estate projects were ultimately successful. The Complaint only includes conclusory statements reciting the elements of 11 U.S.C. § 523(a)(6).

Because Gonzales cannot prevail on the claim to pierce the corporate veil, Behrendt is entitled to summary judgment on the claim for relief asserted under 11 U.S.C. § 523(a)(6).

**CONCLUSION**

Our country and the residential real estate development industry were paralyzed by the COVID-19 pandemic. The real estate projects failed for this reason. No matter how many legal theories are advanced by Gonzalez, the bottom line is that she never dealt with Behrendt, she wasn't defrauded, there were no fraudulent transfers, and Behrendt did not engage in any misconduct. For the reasons stated above, Behrendt is entitled to judgment as a matter of law. Accordingly, the Motion for Summary Judgment is hereby GRANTED and the within adversary proceeding is dismissed with prejudice, each party to bear its own costs and attorney's fees.

Dated this 26th day of September, 2025.

BY THE COURT:

_____
Joseph G. Rosania, Jr.
United States Bankruptcy Judge